UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY A. HEUER, <br> Plaintiff <br><br> v. <br><br> BMO HARRIS BANK, N.A., *et. al,* <br> Defendants | No. 23 CV 6153 <br><br> Judge Jeremy C. Daniel |

### ORDER

The defendants' motion [11] to stay this litigation is granted and their motion to dismiss is denied without prejudice to refiling upon resolution of the foreclosure action. The parties shall provide the Circuit Court with a copy of this Memorandum Opinion and file a joint status report with this Court within fourteen days of the Circuit Court's final disposition of Case Number 2022 CH 00007. At that point, the parties may advise the Court as to whether any claims remain pending for this Court's consideration.

### STATEMENT[1]

In June 2001, William E. Heuer Sr. executed the William E. Heuer Sr. and Anita Heuer Revocable Living Trust ("Heuer Trust"). (R. 1 at 1.) The Heuer Trust owns a home located at 810 Oregon Trail, Roselle, Illinois, 60172. (*Id.* ¶ 29.) The present dispute concerns Plaintiff Nancy A. Heuer's claim that she is the successor of the Heuer Trust. (*See id.* ¶ 12.) Currently, Nancy lives in the Oregon Trail home as her primary residence. (*Id.* ¶¶ 2–3.)

In 2011, William[2] individually and as Trustee of the Heuer Trust, borrowed $89,500.00 from Defendant BMO Harris Bank, N.A. ("BMO"). (*Id.* ¶ 4.) To secure the loan, William, as Trustee of the Heuer Trust, granted a mortgage lien on the Oregon Trail home. (*Id.* ¶ 5.) Defendant Dovenmuehle Mortgage, Inc. ("DMI") services the loan. (*Id.* ¶ 8.) William died on October 29, 2018. (R. 1-9.) Following William's death, Nancy began making mortgage payments on the loan. (*See* R. 1 ¶ 23.)

---

[1] As this is a motion to dismiss, the following description of the events underlying the plaintiff's claims is drawn from the well-pleaded factual allegations in the complaint, which are presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).
[2] Because the plaintiff and William E. Heuer Sr. have the same surname, the Court refers to these individuals by their first names.

In 2020, Nancy fell behind on the mortgage payments. (*Id.*) On January 3, 2022, BMO filed a foreclosure action in the Circuit Court of Cook County. (*Id.* ¶ 24.) On October 18, 2022, Nancy received a letter addressed to both Nancy and William stating that they were approved for a Trial Period Plan ("TPP") for loan modification. (*Id.* ¶ 25; R. 1-2, Ex. 2 ("TPP Offer Letter") at 2.)[3] The letter states that successful completion of the TPP requires three monthly payments of $640.73. (*Id.* ¶ 27.) The TPP required the checks to be made payable to BMO and mailed to DMI's corporate office. (*Id.* ¶¶ 34–36; *see* TPP Offer Letter at 3.) Nancy alleges that she mailed payments as instructed for three months between December 2023 and February 2023. (*Id.* ¶ 30.)

In March 2023, Nancy received a letter on BMO letterhead with a return address to DMI's corporate headquarters stating that "Your request for a Loan Modification has been approved." (*Id.* ¶¶ 32–36; R. 1-3, Ex. 3 ("Loan Modification Approval") at 2.) The document included two signature lines for William, first, in his personal capacity and, second, as trustee. (R. 1 ¶ 39; Loan Modification Approval at 5.) The document did not include a signature line for Nancy, however. (R. 1 ¶¶ 37–38; Loan Modification Approval at 5.)

On April 5, 2023, Nancy's attorney mailed BMO a Notice of Error ("NOE") regarding its failure to acknowledge Nancy's status as the successor of the Heuer Trust. (R. 1 ¶ 38; R. 1-4, Ex. 4 at 3.) On April 21, 2023, BMO informed Nancy via letter that her NOE had been reviewed but that "no action was required" because no error had occurred. (R. 1 ¶¶ 75–83; R. 1-6, Ex. 6 at 2.) The letter also stated that "records show that we still need the TRUST CERTIFICATE SIGNED BY CURRENT TRUSTEE from your client to have [Nancy] confirmed as the Successor in interest and to be reviewed to assume the loan." (*Id.* (emphasis in original).) Although Nancy "has received no valid modification agreement from the defendants and has not been told to do so," between April and August 2023, Nancy continued making TPP payments in-person at a BMO branch location, which BMO accepted. (R. 1 ¶¶ 42–43.)

Nancy filed this suit under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and its implementing regulations, 12 C.F.R. §§ 1024.35(e), 1024.41(g). (R. 1.)[4] RESPA imposes duties on lenders and servicers of federally related mortgages and creates a private right of action for violations. 12 U.S.C. § 2605(f). The complaint alleges that the defendants failed to properly respond to the NOE (Count I); wrongly sought foreclosure while the TPP application was pending (Count II); and violated the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* (Count III).[5] The defendants have filed a motion to stay or dismiss the case. (R. 11.)

---

[3] By attaching documents to her complaint, Nancy made them a part of the complaint "for all purposes." Fed. R. Civ. P. 10(c).
[4] Jurisdiction over Nancy's federal claims is proper under 28 U.S.C. § 1331.
[5] The Court may exercise supplemental jurisdiction over Nancy's state law claim pursuant to 28 U.S.C.§ 1367.

2

The defendants' motion for a stay "'does not fit neatly into Rule 12(b)(1) or Rule 12(b)(6),' but when such a motion 'asks the Court to decline jurisdiction,' . . . 'it fits more comfortably under Rule 12(b)(1).'" *Stewart v. JPMorgan Chase Bank, N.A.*, No. 23 C 3731, 2024 WL 554281, at *5 (N.D. Ill. Feb. 12, 2024) (citation omitted). In the context of either a Rule 12(b)(6) motion or a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The motion to stay here raises a factual challenge to jurisdiction, however, and so the Court may consider and weigh evidence outside the pleadings to determine whether it has jurisdiction over the action. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). "When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first." *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. July 21, 1998).

Beginning with their Rule 12(b)(1) challenge, the defendants argue that this case should be stayed based on the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976) ("*Colorado River*"). (R. 12 at 3–6.); *Stewart*, 2024 WL 554281, at *6 (N.D. Ill. Feb. 12, 2024) (collecting cases) ("[A] stay, not dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine.") (citation omitted). "Generally speaking, the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). "The *Colorado River* doctrine, however, creates a narrow exception to that rule allowing federal courts in some exceptional cases to defer to a concurrent state court case as a matter of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*

To decide whether this case presents an exceptional circumstance warranting abstention, the Court conducts a two-part analysis. *See id.* First, the Court determines whether the state and federal court actions are parallel. *Id.* If so, the Court weighs ten non-exclusive factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of

> concurrent jurisdiction; 9) the availability of removal; and
> 10) the vexatious or contrived nature of the federal claim.

*Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 500–01 (7th Cir. 2011). No single factor is determinative, and the balancing of the factors can vary greatly case to case, "with the balance weighted in favor of the exercise of jurisdiction." *Id.* at 501.

### **This Action is Parallel with the State Court Foreclosure Action.**

BMO first argues that the two suits are parallel. (R. 12 at 3–6.) Nancy contests this characterization because DMI is "not a party to the foreclosure and likely cannot be made one." (R. 17 at 5.) But "[t]wo suits need not be mirror images to be considered parallel." *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir. 2024). "Rather, concurrent actions are parallel 'when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* at 993–94 (quoting *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020)). Here, while DMI is not party to the state foreclosure action, as sub-servicer of the mortgage, its incentives and goals align with BMO, making the parties "functionally the same." *Antosh*, 99 F.4th at 994; *see e.g.*, *Nieves v. Bank of Am., N.A.*, No. 14 C 2300, 2015 WL 753977 at *4 (N.D. Ill. Feb. 20, 2015) (finding that parallelism existed "[a]lthough . . . some of the claims in the federal complaint are asserted against the [loan servicers]—which are not named as parties in the State Foreclosure Action").

Nancy next argues that there is no parallelism because the state foreclosure action is centered around BMO seeking an *in-rem* remedy while this action is centered around Nancy exercising rights under state and federal law. (R. 17 at 6.) Yet, "an exact fit between the federal and state cases," is not required. *Antosh*, 99 F.4th at 994. "[T]he key inquiry is not whether the alignment of the claims and remedies in the two cases is the same, but rather whether 'the central legal issues remain the same in both cases.'" *Loughran v. Wells Fargo Bank, N.A.,* 2 F.4th 640, 649 (7th Cir. 2021) (quoting *Clark*, 376 F.3d at 687).

Here, although Nancy's federal claims are not identical to those at issue in the foreclosure action, "[t]he cases are parallel in all the ways that matter under *Colorado River*." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021). Namely, resolving the foreclosure action requires "examining largely the same evidence," *Huon*, 657 F.3d at 647, because both actions must determine whether Nancy is the successor trustee of the Heuer Trust. (R. 17 at 9.). Both actions also concern the Heuer Trust, the $89,500.00 loan William obtained from BMO using the home as collateral, the timeliness of payments on that loan, and whether Nancy has authority to modify the mortgage loan. *See, e.g., Nieves*, 2015 WL 753977 at *4 (granting motion to stay where "[b]oth actions involve[d] the same property, the same mortgage, the same note and the payments thereunder").

4

**The Weight of the *Colorado River* Factors Favor Abstention.**

Next, the Court weighs the ten factors listed above to determine if abstention is proper. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1021 (7th Cir. 2014). The Court has "discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Id.* "Not all of these considerations will be pertinent to every case, nor does this list preclude the district court from taking into account a special characteristic of the case before it." *DePuy Synthes Sales, Inc.*, 953 F.3d at 477. Absent or neutral factors weigh in favor of exercising jurisdiction. *Huon*, 657 F.3d at 648.

The first factor favors abstention because the state court assumed jurisdiction over the property in its foreclosure action. *See, e.g., Freed*, 756 F.3d at 1021. The inconvenience of the federal forum factor is neutral as both cases are pending in Cook County. *See, e.g., id.* Next, the desirability of avoiding piecemeal litigation factor strongly favors abstention because the state foreclosure action is likely to dispose of key factual and legal issues in this case. Abstention would prevent the parties from contemporaneously litigating similar issues, such as Nancy's stake in the property, and avoid wasteful litigation. *See id.* at 1022 (recognizing that two courts separately overseeing similar proceedings effectively duplicates the amount of judicial resources). Abstaining when key underlying issues are likely to be decided by the state court also prevents "a collision of conflicting rulings." *Driftless Area Land Conservancy*, 16 F.4th at 527.

Regarding the order in which jurisdiction was obtained by the concurrent forums, the state foreclosure action was filed in January 2022, over a year and half before this action was filed. This factor therefore favors abstention. *See, e.g., Freed*, 756 F.3d at 1022. The source of governing law factor is neutral "because the federal action involves both federal- and state-law claims." *Loughran*, 2 F.4th at 650.

The adequacy of state-court action to protect the federal plaintiff's rights factor favors abstention. "The state courts are co-equal partners with the federal courts when it comes to protecting federal rights." *DePuy Synthes Sales, Inc.*, 953 F.3d at 479. Because RESPA grants concurrent jurisdiction to the state court, the state court is a sufficient vehicle for Nancy to pursue her claims. *See* 12 U.S.C. § 2614; *see, e.g., Karol v. Old Second Nat'l Bank*, No. 20 C 4344, 2020 WL 6343088 at *5 (N.D. Ill. Oct. 29, 2020). Additionally, because the *Colorado River* Doctrine is implicated through a stay, as opposed to dismissal, *see Stewart v. JPMorgan Chase Bank, N.A.*, No. 23 C 3731, 2024 WL 554281, at *6 (N.D. Ill. Feb. 12, 2024), Nancy may "reviv[e] [her] federal litigation depending on the outcome in state court or in the unlikely outcome event that the state court action is inadequate." *Freed*, 756 F.3d at 1023.

The Court notes Nancy's concern about the "permanent implications" of abstention. (R. 17 at 7.) Nancy is correct that Illinois courts have interpreted 735 ILCS § 5/15-1509 "to preclude all claims of parties to the foreclosure related to the mortgage or

5

the subject property" after a judgment of foreclosure and an order confirming the judicial sale. *Adler v. Bayview Loan Servicing, LLC*, 180 N.E.3d 241, 248 (Ill. App. Ct. 2015). However, no judicial sale of the home has occurred. *Adler* noted that the proper time for the plaintiffs to raise their RESPA claims "was in fact *between* the judgment of foreclosure and the confirmation of the sale, as contemplated in section 15-1508." *Id.* (emphasis added). Thus, *Adler* acknowledges that Nancy may raise RESPA claims in state court following a judgment of foreclosure and Nancy supplies no concrete reason why the state court could not protect her rights. Regardless, the stay leaves open the possibility for Nancy to revive her "federal case in the event that certain issues survive the resolution of the foreclosure action." *Loughran*, 2 F.4th at 650.

The relative progress of the state and federal proceedings factor slightly favors abstention. The state court has already ruled on Nancy's motion to dismiss in the foreclosure case, and BMO has filed a motion for summary judgment, and so the state case has proceeded further. (R. 12 at 4–5; R. 21 at 2.) Concerning the presence or absence of concurrent jurisdiction, because all of Nancy's claims can be heard in either court, "the availability of concurrent jurisdiction weighs in favor of a stay." *Clark*, 376 F.3d at 688. The parties did not address the availability of removal in their briefing and neither will the Court. *DePuy Synthes Sales, Inc.*, 953 F.3d at 477.

Finally, the defendants argue that Nancy's federal claims are vexatious or contrived because she filed this action in lieu of responding to their summary judgment motion in the state foreclosure action. (R. 12 at 4–5.) Other than pointing to the fact that DMI is not a party to the state case, Nancy does not explain why she brought these claims in federal court rather than adding them to her state case. Indeed, 735 ILCS § 5/2-608 seemingly allows Nancy to file her RESPA claims as counterclaims against BMO. (permitting "any claim by . . . defendants against . . . plaintiffs . . . [to] be pleaded as a cross claim in any action, and . . . shall be called a counterclaim.") Such may "raise[] a potential concern about forum-shopping or delay." *GeLab Cosms. LLC v. Zhuhai Aobo Cosms. Co.*, 99 F.4th 424, 431 (7th Cir. 2024). In any event, "[e]ven if [the Court] were to count this factor as something disfavoring abstention, it would not tip the balance given the strength of the other points." *Id.* In sum, the weight of the factors favor abstention.

For the foregoing reasons, the motion to stay this case is granted. The Court accordingly does not reach the defendants' arguments in favor of Rule 12(b)(6) dismissal. It is so ordered.

Date: August 13, 2024

JEREMY C. DANIEL
United States District Judge

6